**SO ORDERED.**

**SIGNED this 17 day of March, 2010.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **KERRY MICHAEL MARSTON and BROOKE ANNE MARSTON,** | **09-11058-8-JRL** |
| | **Chapter 13** |
| DEBTORS. | |

### ORDER

This case is before the court on the debtors' motion to impose sanctions for violation of the automatic stay. On March 10, 2010, the court conducted a hearing on this matter in Raleigh, North Carolina.

The debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on December 18, 2009. Prior to filing for bankruptcy, Brooke Marston ("Marston" or the "debtor"), owned and operated a tanning salon ("Tuscan Sun") in premises leased from Connie Lynn and Diane Blalock (the "Blalocks"). Marston decided to withdraw from the tanning business and entered into an agreement with Margaret Reding ("Reding") to take over the ownership and operation of Tuscan Sun. Marston and Reding executed a written agreement dated July 25, 2009, under which Marston agreed to sell Tuscan Sun to Reding for $60,000, payable over six years, with the first loan payment due August 1, 2010. Reding took over operations at Tuscan Sun and entered into a lease agreement with the Blalocks, but she was

unable to make the monthly lease payments.  On December 22, 2009, the Blalocks ejected

Reding from the premises and took possession of Tuscan Sun based on default of the lease

agreement.  Marston's attorney then notified the Blalocks that Marston had filed for bankruptcy

and requested turnover of the personal property located inside of Tuscan Sun when the Blalocks

took possession of the leased premises (the "property").  The Blalocks refuse to turnover the

property, and Marston asks the court to impose sanctions on the Blalocks for willful violation of

the automatic stay.

Under 11 U.S.C. § 362 an individual injured by any willful violation of the automatic

stay can recover damages, including damages against any person willfully exercising control

over property of the estate.  11 U.S.C. § 362(a)(3), (k).  The parties do not dispute that the

Blalocks are in control of the property, nor is there any dispute as to whether the Blalocks had

notice of Marston's filing when they refused to turn over the property.  Thus the only issue

before the court is whether the property being held by the Blalocks is property of the estate.

A bankruptcy estate is comprised of "all legal or equitable interests of the debtor in

property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  The Blalocks assert that

the debtor did not retain a valid security interest in the property, while Marston argues that July

25th agreement shows that she retained a property interest such that a default by Reding would

cause ownership of the property to revert back to herself.  The court finds that Marston and

Reding intended the July 25th agreement to memorialize each other's rights and obligations

concerning the sale of the property, and the court looks to that agreement to determine whether

the debtor had a legal interest in the property as of the commencement of her bankruptcy case.

Contracts must be interpreted according to the "common meaning" of the words and

phrases contained therein, and the intent of the parties must be judged by such "objective criteria

2

rather than the unmanifested states of mind of the parties." 17 AM. JUR. 2D *Contracts* § 356. The plain language of the July 25th agreement delineates two separate default provisions. First, the agreement states that Reding will pay $60,000 within six years after purchasing the property, with minimum payments of $10,000 each year. "If the payments are not made as stated above Brooke Marston, has the right to reclaim the salon . . . ." The first payment under the agreement is due August 1, 2010. When the debtor filed for bankruptcy on December 18, 2009, the first loan payment was not yet due and consequently Reding could not have been in default under the first default provision.

Second, the next paragraph provides: "In the event Margaret Reding can not keep salon during the term of the loan, it is her responsibility to sell salon and pay Brooke Marston the balance of the loan and give Brooke Marston 30 day notice with 1st option to clear loan and take ownership of salon." This second default provision clearly states that if Reding cannot keep the business open she must sell the business and pay off the loan. Although the second default provision allows Marston a right of first refusal if Reding sells the property, it does not contain language which can be construed as creating an automatic right of reversion. If the parties intended the reversionary clause in the first default provision to apply to the second default provision they did not make that intention clear in the plain language of the contract, and the court cannot effect to such unmanifested intentions.

Based on the foregoing, the court finds that the property at issue is not property of the estate, and the debtor's motion for sanctions for violation of the automatic stay is DENIED.

**"END OF DOCUMENT"**